UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 16-10214-RWZ


JAMES SWALES

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the Social Security Administration


<u>MEMORANDUM OF DECISION</u>

March  28, 2017


ZOBEL, S.D.J.

Plaintiff James Swales appeals from a final decision by the Acting Commissioner

of Social Security ("the Commissioner") upholding the ruling of the Administrative Law

Judge ("ALJ") that rejected his application for Supplemental Security Income ("SSI").

Plaintiff contends that the ALJ erred in determining his physical and mental residual

functional capacity ("RFC") and in concluding that jobs existed in the economy that he

could perform.

## I.     Background

Plaintiff filed an application for SSI on July 5, 2012, alleging disability beginning

---

[1]     Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W. Colvin as Acting Commissioner of the Social Security Administration.

on January 1, 2007.[2]  His claim was first denied on October 9, 2012, and again upon

reconsideration on February 21, 2013.  Plaintiff filed a request for a hearing before an

ALJ, and a hearing was held on July 1, 2014.  At the hearing, plaintiff and a vocational

expert ("VE") testified.

### A.    Applicable Statutes and Regulations

To receive SSI benefits, a claimant must be "unable to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The impairment "must be of such severity

that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy."  Id. § 1382c(a)(3)(B); see also 20 C.F.R.

§ 416.905(a).

The ALJ analyzes whether a claimant is disabled using an established "five-step

sequential evaluation process."  See 20 C.F.R.§ 416.920(a)(4)(i)–(v).  Under this

framework, the ALJ first determines whether the claimant is currently engaging in

substantial gainful work activity.  If not, then at step two, the ALJ decides whether the

claimant has a "severe" medical impairment or impairments, which means the

impairment "significantly limits [the claimant's] physical or mental ability to do basic work

---

[2]        These are the dates used in the ALJ's decision.  The application date used is consistent
with "Disability Determination and Transmittal" documents from the Social Security Administration that lists
the filing date as July 5, 2012.  Docket # 11-3, at 13, 23.  The record also contains an "Application
Summary for Supplemental Security Income," which says that plaintiff applied for SSI on July 12, 2012,
see Docket # 11-5, at 2, as well as a letter from attorney Penelope Gronbeck, which states that the
application date was June 28, 2011, see Docket # 11-6, at 73.

activities," id. § 416.920(c).  If the claimant has a severe impairment or impairments, then the ALJ considers third whether the impairment or impairments meets or equals an entry in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement.  If so, then the claimant is considered disabled.  If not, the ALJ must determine the claimant's RFC, which is "the most [a claimant] can still do despite [his] limitations," 20 C.F.R. § 416.945(a)(1).  The ALJ then moves to step four and determines whether the claimant's RFC allows him to perform his past relevant work.  If the claimant has the RFC to perform his past relevant work, then he is not disabled.  If the claimant does not, the ALJ decides, at step five, whether the claimant can do other work in light of his RFC, age, education, and work experience.  If the claimant can, he is not considered disabled; otherwise, he is.  "Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 416.912(f), 416.960(c)(2).

### B.    The Initial Rejection and the ALJ's Decision

In a July 25, 2014, written decision, structured around the five-step sequential evaluation process, the ALJ found plaintiff was not disabled under the Social Security Act.  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 5, 2012, the date on which he filed his SSI application.[3]  Next, at step

---

[3]       The regulations provide that "[w]hen you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.  If you file an application after the month you first meet all the

two, he found that plaintiff has the following severe impairments: disorder of the back, disorder of the right knee status post ACL reconstruction in 2005, affective disorder, and anxiety disorder.  See 20 C.F.R. § 416.920(c).  At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Docket # 11-2, at 13.  Before moving to step four, the ALJ determined plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can only occasionally climb, balance, stoop, kneel, crouch, crawl, and can never climb ladders.  He can push and pull with his right lower extremity no more than occasionally.  He must avoid concentrated exposure to extreme cold, extreme heat, wetness, fumes, odors, dusts, gases, and poor ventilation.  He is limited to only occasional interaction with the public, coworkers, and supervisors, and he is limited to the performance of simple, routine, repetitive instructions.

Id. at 14–15.  The ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and that he "also considered opinion evidence" in accordance with the Social Security regulations.  Id. at 15.  He ultimately concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  Id. at 16.  Specifically, the ALJ noted that plaintiff "is able to perform a wide and varied range of activities of daily living," that "treatment for his impairments has been routine and conservative," and

---

other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month."  20 C.F.R. § 416.335.

4

that plaintiff "reported to his doctors that his [criminal record] is the main deterrent to his working." Id. at 17.

At the fourth step, the ALJ concluded, relying on the VE's testimony, that the plaintiff was unable to perform past relevant work.  Finally, at step five, the ALJ determined, based on the VE's testimony, "that, considering the claimant's age, education, work experience, and residual functioning capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 19.  The VE had testified that the claimant could perform representative occupations such as cafeteria attendant, cleaner/housekeeper, and laundry worker.  Accordingly, the ALJ concluded that the claimant was not disabled.

### C.    The Appeal

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied review on December 15, 2015.  The ALJ's decision then became the final decision of the Commissioner, and plaintiff brought this case under 42 U.S.C. § 405(g), seeking reversal thereof.

## II.    Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence.  42 U.S.C. § 405(g); Seavey, 276 F.3d at 9.  Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion."  Rodriguez

Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Further, resolving credibility issues "and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)). Questions of law are reviewed de novo. Seavey, 276 F.3d at 9.

## III.    Discussion

Plaintiff first argues that the ALJ erred in determining that plaintiff had the RFC to perform light work.  Specifically, he claims that the ALJ disregarded the RFC assessment of plaintiff's physician, Dr. Louis Maggio, and instead "relied solely on his own lay judgment and his own lay interpretation of the medical evidence."  Docket # 12, at 4.

When measuring a claimant's capabilities, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam).  The reason for requiring an expert's RFC assessment is that generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (per curiam); see also Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) ("[S]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record."). "This principle does not mean, however, that the [Commissioner] is precluded from

6

rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment."  Gordils, 921 F.2d at 329.

Here, the record contained a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" from Dr. Maggio, dated February 8, 2012.  Dr. Maggio indicated that plaintiff could occasionally lift and/or carry less than ten pounds, was limited to standing and/or walking for less than two hours in an eight-hour workday, and was limited in his lower extremities.  Docket # 11-11, at 68–69.  Dr. Maggio's statement contained a number of qualifications.  In response to question five, which asks "[w]hat medical/clinical finding[s] support" these conclusions, Dr. Maggio wrote, "Don't have patient's old medical records.  Recommend you obtain patient's medical records from previous primary care M.D.  Referred to orthopedic and psychiatry specialists."  Id. at 69.  Dr. Maggio also wrote that plaintiff "requires evaluation/treatment per orthopedic surgeon," that plaintiff "needs knee surgery," and that Dr. Maggio "cannot comment on long term disability until the operation has been performed and [plaintiff's] post-operation functional status is re-assessed."  Id. at 69.  Above the signature line, Dr. Maggio wrote "signed only from my knowledge of patient as [a Blue Hills Medical Associates] patient."  Id. at 71.[4]

---

[4]        The form Dr. Maggio filled out contains a typed statement: "Based on my education, training, and experience and my evaluation of Mr. Swales including treatment of him and review of his records and history, the foregoing represents my professional opinion as to James Swales's physical limitations from 12/01/05 to the present."  Docket # 11-11, at 71.  Above this statement, Dr. Maggio wrote by hand, "I can not ethically sign off below, but the information is only based on clinical records of Mr. Swales at [Blue Hills Medical Associates]."  Id.  Dr. Maggio then, by hand, crossed off the words "on my education," "experience," and "limitations from 12/01/05 to the present" from the typed statement and wrote next to the typed statement, "Signed only from my knowledge of patient as BHMA patient."  Id.  The ALJ's decision did not note the limitations of Dr. Maggio's evaluation.

The ALJ gave Dr. Maggio's opinion — the only RFC in the record — little weight because it was "inconsistent with other substantial evidence in the record" and "not well-supported by the medical evidence."  Docket # 11-2, at 17.  Rather, the ALJ relied on "[t]he objective medical evidence of record," including two 2013 reports from orthopedist Dr. Andrew Ayers.  Docket # 11-2, at 16.  The ALJ explained that the report from an August 2013 visit stated, inter alia, that plaintiff was training for the Boston Marathon and being treated with injections.  See Docket # 11-7, at 108.  Given this information as well as the limitations on the face of Dr. Maggio's evaluation, the ALJ did not err in assigning little weight to Dr. Maggio's statement.  To be given "controlling weight," a treating source's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [must not be] inconsistent with the other substantial evidence in your case record."  20 C.F.R. § 416.927(c)(2); see SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996).  "If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight."  SSR 96-2P, 1996 WL 374188, at *2.  When an opinion is not given controlling weight, then the ALJ considers a number of factors in determining what weight to give it, including the support a source has for an opinion and how consistent the opinion is with the record as a whole.  See 20 C.F.R. § 416.927(c)(2)–(4).  The ALJ applied these factors here, and he did not err in this regard.

The ALJ did err, however, in his reliance on plaintiff's medical records to determine plaintiff's RFC.  "[T]he record here is sufficiently ramified that understanding it requires more than a layperson's effort at a commonsense functional capacity assessment."  Manso-Pizarro, 76 F.3d at 19.  While one report did say plaintiff was

8

training for the Boston Marathon, the reports from Dr. Ayers also contained medical findings.  For example, the February 2013 report included that "the right knee shows no significant knee effusion," "[t]here is no warmth or erythema," plaintiff had "some peripatellar discomfort and some mild medial compartmental pain," plaintiff had "good range of motion without limitations although full flexion did produce some anterior symptoms," there was "no patellar instability," "[p]atellofemoral grind testing is positive," "[m]eniscus testing is negative," and "[l]igamentous testing shows all ligaments are functioning normally."  Docket # 11-7, at 107.  Other parts of this report as well as the report from an August 2013 visit detailed plaintiff's condition in similarly technical language.

"The ALJ as a layman is not qualified to conclude that these bare medical findings support a light-work capability."  Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 432 (1st Cir. 1991) (per curiam) (explaining that the medical record included "medical findings of a relatively mild left knee condition, stating that claimant had 'mild effusion into left knee' with no edema and good range of motion in all joints"); see also Roberts v. Barnhart, 67 F. App'x 621, 623 (1st Cir. 2003) (per curiam) ("An ALJ may determine RFC only '[i]f th[e] evidence suggests a relatively mild . . . impairment posing, to the layperson's eye, no significant . . . restrictions.'" (alterations in original) (quoting Manso-Pizarro, 76 F.3d at 17–18)).  Further, here, the ALJ determined that the medical evidence supported an RFC to perform light work, as opposed to sedentary work, a finding that generally requires support by an expert's functional assessment.  Cf. Gordils, 921 F.2d at 329 ("Although we think it permissible for the Secretary as a layman to conclude that a 'weaker back' cannot preclude sedentary work, we would be troubled by

the same conclusion as to the more physically demanding light work."); <u>see also</u> <u>Berrios</u>
<u>Lopez</u>, 951 F.2d at 432.[5]  Accordingly, a remand for further evidence of plaintiff's
functional ability is appropriate.  <u>Cf.</u> <u>Manso-Pizzaro</u>, 76 F.3d at 19.

      To be sure, the reason the record contains no RFC assessment other than Dr.
Maggio's is, at least in part, plaintiff's failure to cooperate with the state agency's attempt
to evaluate him.  The disability determination explanation from Dr. Barbara Trockman
states that a consultative examination was required because "[claimant] has no treato
[sic] for his knee impairment and is willing to attend a [consultative examination]."
Docket # 11-3, at 7.  It then includes that there is "insufficient evidence" to determine
whether plaintiff has a disability because he "missed multiple [consultative examinations]
without reason."  <u>Id.</u> at 8.  And the regulations provide that failure to participate in a
consultative examination may support a finding of no disability.  <u>See</u> 20 C.F.R.
§ 416.918(a) ("If you are applying for benefits and do not have a good reason for failing
or refusing to take part in a consultative examination or test which we arrange for you to
get information we need to determine your disability or blindness, we may find that you
are not disabled or blind."); <u>cf.</u> <u>Russell v. Barnhart</u>, 111 F. App'x 26, 27 (1st Cir. 2004)
(per curiam) ("A claimant's failure to follow prescribed medical treatment contradicts
subjective complaints of disabling conditions and supports an ALJ's decision to deny
benefits.").  On remand, if plaintiff fails to participate in a requested examination without
good reason, the ALJ may well determine that such nonattendance precludes a finding

---

     [5]     The ALJ thus also erred in relying on the VE's testimony at step five, as the VE's
testimony was based on the RFC the ALJ determined.  <u>See</u> <u>Arocho v. Sec'y of Health & Human Servs.</u>,
670 F.2d 374, 375 (1st Cir. 1982) ("[I]n order for a vocational expert's answer to a hypothetical question to
be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the
outputs from the medical authorities.").

that plaintiff is disabled.  However, the court declines to draw such a conclusion absent further consideration by the ALJ.

In light of this remand, I need not reach plaintiff's second argument that the ALJ erred in determining plaintiff's mental RFC.  Cf. Manso-Pizarro, 76 F.3d at 19 n.6.

## IV.    Conclusion

Plaintiff's Motion to Reverse the Decision of the Commissioner (Docket # 12) is ALLOWED, and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 15) is DENIED.

Judgment may be entered reversing the decision of the Commissioner and remanding for further proceedings consistent with this decision.


_____March 28, 2017_____                    _____/s/Rya W. Zobel_____
DATE                                                                    RYA W. ZOBEL
                                                                SENIOR UNITED STATES DISTRICT JUDGE

11